UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| **RICHARD BOOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 2:16-cv-0058-DKL-WTL** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

*Entry on Judicial Review*

Richard Booe seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits.  The parties have consented to the Magistrate Judge's jurisdiction.  For the following reasons, the Commissioner's decision will be reversed and remanded.

*Background*

Booe alleges that he has been unable to work since January 2009.  In May 2014, an Administrative Law Judge (ALJ) held a hearing by video conference at which Booe, represented by an attorney, testified.  A vocational expert (VE) also testified at the hearing.  Booe claims that he suffers from severe impairments of low back pain that radiates down through his buttocks and into his leg, depression, and sleep apnea.  [R. 39.] He also suffers from hearing loss.  His sleep apnea is treated with a CPAP machine.

At the time of the hearing, Booe was 59 years old.  He lived by himself.  He had been receiving food stamps but he was not getting them at the time.  [R. 35.]  He was

living off the proceeds from the sale of property (valued at $175,000) he had inherited in 2005 and from cashing out his 401(k).  [R. 35, 41-2.]  He received a check for $13,000 annually from the sale of the property.

Booe worked for 35 years at an aerosol manufacturing company.  [R. 35-36.]  His job was on the line and required him to lift and dump bottles, to stand and walk a lot, and regularly lift skids that weighed 100 pounds.  [R. 36-37.]  Booe testified that he was fired from his job for missing too many days of work during the winter, but he also said that he missed two to three days each month because of illness or because of his impairments.  [R. 37.]

Booe stated that he has suffered from lower back pain for several years.  He said that he could stand for 20 minutes before he would have to sit down, sit 15 to 20 minutes before he would have to get up, and walk a block before having to stop because of back pain and shortness of breath.  [R. 39-40.]  He thought he could lift and carry 10 to 20 pounds.  He takes naps, which help with his pain.  He also takes painkillers, including Tramadol, a narcotic used to treat moderate to severe pain as well as medication for depression.  His medications cause him drowsiness.  On a scale of 1 to 10, Booe rated his pain 6 with medication and 8 without.  [R. 40-41.]  In a typical day, he does some housework and mows the lawn, using a riding mower.  [R. 43-44.]  He also tends to his garden.  [R. 44.]  He said that his family doctor told him not to do heavy lifting.  [R. 46.]

According to Booe, since the end of 2013, he has been seeing Dr. Elaine Chappelle, M.D., and Tasha Lewis Stevens, a licensed clinical social worker and therapist.  [R. 38.]  He said he received ultrasound treatments before late 2013, but he could not remember

when.  Although he had trouble hearing, he did not wear hearing aids because he was never told to get them.

The VE testified that Booe's past work was as a line operator, which was heavy as he performed it, but is generally performed at the medium exertional level.  [*Id.*]  She also testified that a hypothetical individual with impairments as described by the ALJ (no fine-hearing ability or complex verbal communication; limited to simple, routine, repetitive tasks; no written communication above a grade school level; no lengthy or complex discussions required; no more than simple decision making; no more than occasional and minor changes in work setting; work expectations remain unchanged; no direct public service work but can tolerate brief and superficial interaction with the public, coworkers, and supervisors), would be able to perform Booe's past work as generally performed at the medium exertional level.  [R. 46-49.]  The VE understood that medium level work meant lifting no more than 50 pounds occasionally and 25 pounds frequently, with no limitation on sitting, standing or walking.  [R. 50.]

The ALJ issued a decision, finding that Booe met the insured requirements of the Social Security Act through 2014 and had not engaged in substantial gainful activity since January 31, 2009, his alleged onset date.  [R. 12.]  The ALJ determined that Booe suffers from limited hearing, a severe impairment, and that he also has degenerative disc disease, supported by x-ray evidence, depression, and sleep apnea, though none of these other impairments were found "severe."  [R. 12, 20.]  The ALJ also found that Booe's depressive disorder "does not cause any severe limitations, beyond those caused by his hearing difficulties[.]"  [R. 14.]  The ALJ acknowledged that Ms. Lewis-Stevens had diagnosed

3

Case 2:16-cv-00058-DKL-WTL   Document 25   Filed 03/17/17   Page 4 of 10 PageID #: 442


Booe with major depressive disorder, recurrent, severe without psychosis.  [R. 13-14 (citing Ex. 11F 2-4); R. 294.]  According to the ALJ, none of Booe's impairments meets or medically equals the severity of a listed impairment.  [R. 14.]  The ALJ determined that Booe has the residual functional capacity to perform a full range of work at all exertional levels with numerous nonexertional limitations and that given his residual functional capacity and the VE's testimony, he was capable of performing his past relevant work as a line operator [R. 15, 22].  The ALJ concluded that Booe was not disabled under the Social Security Act and denied his application for disability insurance benefits.  [R. 23.]

*Discussion*

In reviewing the ALJ's decision, the Court determines whether it is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The Court does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ.  *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  An ALJ need not mention every piece of evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but the ALJ must build an accurate and logical bridge from the evidence to his conclusion, *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015), and the ALJ's decision must be internally consistent.  *See, e.g., Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1998); *Reed v. Colvin*, Cause No. 3:15-cv-177, 2016 WL 3537194, at *4 (N.D. Ind. June 28, 2016).

Several errors in the ALJ's decision require remand in this case.  First, the ALJ initially found that Booe's depression causes no more than minimal limitation in his ability to perform basic work activities, that is, was not severe [R. 12; *see* 20 C.F.R. § 404.1520(c) (explaining that a severe impairment "significantly limits your physical or mental ability to do basic work activities")], but later concluded that Booe's depressive disorder "does not cause any severe limitations, beyond those caused by his hearing difficulties."  [R. 14.]  At best the ALJ's reasoning is unclear; at worst, it is internally inconsistent.  Either way, a remand is necessary for adequate articulation of the ALJ's reasoning.  If Booe's depression or depressive disorder was not severe, then by definition, it could not cause significant limitations.  But the ALJ's suggestion that it causes no severe limitations beyond what was caused by Booe's hearing impairment leaves the Court guessing as to what the ALJ actually means.

Another problem with the ALJ's reasoning is this:  If Booe's depressive disorder is severe and significantly limits his abilities to do basic work activities, the ALJ relied on his own layperson's opinion in deciding that any limitations due to the depressive disorder were adequately accounted for by limitations attributable to Booe's hearing impairment.  No medical source opined that limitations from Booe's depressive disorder would be accounted for by the same limitations attributable to his limited hearing.  In this way, the ALJ "played doctor" and made his own medical findings, which requires remand.  *See, e.g.*, *Rohan*, 98 F.3d at 970.

The ALJ also erred in giving no weight to Dr. Chappel's opinion as to Booe's abilities to lift and carry no more than 10 pounds frequently and 20 pounds occasionally,

as well as his limitations in sitting (2 hours at a time), standing (4 hours at a time), and walking (15 minutes at a time).  [R. 282.]  The ALJ reasoned that Dr. Chappel provided her opinion after one visit specifically for the purpose of completing disability paperwork and that her opinions were inconsistent with her own examination findings and otherwise generally normal examinations.  [R. 21-22.]  But Dr. Chappel's opinion was based on her examination of Booe and she specifically identified the x-ray findings as supporting her assessment of Booe's limitations in lifting and carrying.  [R. 281.]

In addition, the ALJ erred in giving no significant weight to the opinion of Ms. Lewis-Stevens on the basis that she was not an acceptable medical source for opinion evidence.  [R. 22.]  As a licensed social worker, Ms. Lewis-Stevens was not an acceptable medical source who could establish whether Booe has a medically determinable impairment or be considered a "treating source" whose opinion might be entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1502, 404.1513(a).  However, Stanley G. Hogsett, the state agency consulting clinical psychologist, who is an acceptable medical source, *see* 20 C.F.R. § 404.1513(a)(2), also evaluated Booe and on the basis of that evaluation determined that Booe had an adjustment disorder.  [R. 233-37.]  So the ALJ should have considered Ms. Lewis-Stevens' opinion as to the severity of Booe's mental impairment and its effect on his ability to work.  *See* 20 C.F.R. § 404.1513(d).  The Commissioner suggests that the ALJ also relied on the fact that Booe only saw Ms. Lewis-Stevens once and for a disability-focused purpose besides, in giving her opinion no significant weight. But the ALJ's decision, as the Commissioner concedes, is less than clear in this regard. [*See* Comm'r's Br., doc. 23 at 22.]  Besides, the record shows that other medical providers,

including Dr. Chappell and Julia Wernz, PhD., HSPP, a licensed psychologist, made findings consistent with depression or depressive disorder and prescribed Booe medications such as Celexa as well as counseling to treat depression and anxiety.  [*See, e.g.*, R. 245-46, 248, 277, 294.]

There is another significant error in the ALJ's decision.  The ALJ found that Booe had degenerative disc disease, supported by x-ray evidence [R. 20], and that this condition could reasonably be expected to cause the alleged symptoms such as pain and other limitations Booe alleged.  However, the ALJ further found that the degenerative disc disease was not severe [R. 20] and that Booe's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely credible."  [R. 17.] The ALJ's reasoning is insufficient.  The ALJ first relied on the absence of treatment notes from the alleged onset date in January 2009 to November 2012, when Booe was evaluated by the Disability Determination Services.  [*Id.*]  He reasoned that Booe "has not received much treatment related to his conditions" and that his treatment was generally routine and conservative.  [R. 20.]  An ALJ can consider a lack of treatment in reaching a decision, but he is required to ask the claimant about the reasons for the lack of treatment. *See, e.g., Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to obtain treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care."); *Edge v. Berryhill*, No. 15 CV 50292, 2017 WL 680365, at *6 (N.D. Ill. Feb. 21, 2017); SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record [based on the frequency or extent of treatment sought] without considering possible reasons he or she

may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). But the ALJ never asked Booe why he had not received treatment before November 2012 or why he had not received much treatment thereafter. And the record suggests that Booe may have had financial difficulties that played a factor in the treatment or lack thereof that he sought. As the reader will recall, there is evidence that at one point, Booe had been on food stamps, and he was living off $13,000 per year.

And there are other serious errors in the ALJ's analysis that require remand. The ALJ noted that Booe had admitted his degenerative disc disease did not prevent him from doing things, just that he did things more slowly. [R. 20.] However, the ALJ cited the disability report Booe completed in May 2013, which pertained to changes in his daily activities since he last completed a disability report, which was in January 2013. [*See* R. 218-22.] That Booe reported no changes in his daily activities except "moving around a little slower" since his disability report four months earlier does not undermine his claims, especially since he claimed disability going back to 2009. The ALJ also found that Booe described daily activities that "are not very limiting" [R. 20], but none of the minimal activities cited (mowing the lawn on a riding mower, doing housework such as sweeping, mopping making beds, doing laundry, and caring for a dog) appears inconsistent with an inability to lift and carry 10 pounds frequently and 20 pounds occasionally and limitations in walking, standing, and sitting. The performance of minimal daily activities does not establish that a claimant can perform substantial gainful activity, let alone heavy work. *See, e.g., Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("The ALJ's invocation of [claimant's] activities of daily living to discount her testimony

8

that her limitations are more than minimal ... is problematic ...."); *Clifford*, 227 F.3d at 870 (ALJ erred in failing to explain how claimant's daily activities were inconsistent with physician's opinion as to claimant's limitations); 20 C.F.R. § 404.1567(d) (heavy work involves lifting up to 100 pounds and frequently lifting or carrying up to 50 pounds).

Also the ALJ noted that Booe had normal examination findings.  For example, the ALJ said that Booe had a normal gait and station and normal muscle strength and sensation.  [R. 20.]  Implicit in this reasoning is the belief that a person with such findings would not have disabling back pain.  *See Dyer v. Berryhill*, No. 15 CV 50265 2017 WL 680355, at *3 (N.D. Ill. Feb. 21, 2017).  Yet the ALJ cites no medical opinion to suggest that someone with disabling back pain would not have these normal exam findings, and without such evidence the ALJ was "playing doctor."  *Id.*

And as the Commissioner concedes, the ALJ erred in concluding that Booe "has not even been prescribed narcotic pain medication."  [R. 20.]  The record establishes that Booe has been prescribed the narcotic pain medicine Tramadol.  Besides, despite the normal exam findings, Dr. Chappell specifically cited the x-ray report as support for her opinions as to Booe's exertional limitations; yet the ALJ quickly dismisses the x-ray and makes his own finding that Booe was capable of a full range of work, including heavy work, lifting 100 pounds at a time and frequently lifting 50 pounds or more. See 20 C.F.R. § 404.1567(d).  It is difficult to square the ALJ's findings with Dr. Chappel's opinion.

The ALJ further explained that Booe had been living off the income from his inheritance and appeared to have little motivation to work.  [R. 20.]  But the ALJ failed to

acknowledge Booe's extensive 35-year work history, which generally reflects favorably on a claimant's credibility. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

Finally, the ALJ found it "most persuasive" that Booe had admitted to Dr. Chappell that he was fired for missing work because he was unable to get there because of snow and ice and admitted that he was able to perform his job. [R. 20.] Dr. Chappel's record reflects that Booe said such things, but Booe also testified that he missed 2 to 3 days because of illness or his impairments, and the ALJ does not grapple with this testimony. Besides, Booe last worked in 2009, which was four years before he saw Dr. Chappell. Even assuming Booe could perform work at the heavy or medium exertional level back in 2009, there is evidence that his physical condition has declined somewhat since then, as Booe himself reported in the May 2013 disability report. [*See* R. 218-22.]

The Court is not deciding that the record compels the conclusion that Booe is disabled under the Social Security Act but only that the ALJ's analysis does not withstand scrutiny. The Court suggests that the ALJ call a medical expert on remand to assist in evaluating Booe's claim for disability benefits.

### Conclusion

For the above reasons, the Social Security Administration's decision should be reversed and remanded for further proceedings consistent with this opinion.

DATED: 3/17/2017

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record

10